**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

LAWRENCE RAGEL BYRD,                :

      Plaintiff,                              :

vs.                                                    :        CA 11-0468-CG-C

CITY OF DAPHNE, et al.,                  :

      Defendants.                           :

## REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b), on the motion to dismiss filed by defendants the City of Daphne and Corporal Donald Bettner (Doc. 12; *see also* Doc. 13), the motion to dismiss filed by defendants the City of Fairhope and Corporal Murray (Doc. 14), plaintiff's response in opposition (Doc. 26),  and the defendants' replies (Docs. 28 & 29). Upon consideration of the foregoing pleadings, and all other relevant pleadings in the Court's file, the Magistrate Judge recommends that the Court **GRANT** the defendants' motions to dismiss (Docs. 12 & 14; *see also* Docs. 28 & 29).

## FINDINGS OF FACT

On June 6, 2008, Byrd was stopped by Daphne police and cited for speeding. (Doc. 1, ¶ 13.)  Almost one month later, on July 1, 2008, plaintiff was again stopped for speeding by Daphne police. (*Id*. at ¶ 14.) During this stop, Officer Stephen Jenkins smelled alcohol on Byrd's breath and requested that he submit to a breath test; plaintiff

1

acquiesced and the test rendered a positive result of 0.10. (*Id.*) Plaintiff was transported to the Daphne jail. (*See id.*)

On July 2, 2008, Correction Officer Marie Scott informed Corporal Donald Bettner, the Daphne Police Department's sex offender registration officer, that in running a criminal history on a subject (plaintiff) arrested during the night for driving under the influence of alcohol she discovered that he was a convicted sex offender, as he was convicted of first-degree rape in Licking County, Ohio on August 8, 1980. (*Compare id.* at ¶ 15 *with* Doc. 26, Exhibit A.) Bettner checked his files and determined that Byrd was not registered with him or the Baldwin County Sheriff's office as a convicted sex offender. (*Compare* Doc.1,  at ¶ 16 *with* Doc. 26, Exhibit A.) Further investigation by Bettner revealed the following: Byrd's residence, 1307 Main Street in Daphne, was less than the required 2,000 feet from several Daphne schools as set forth in Ala. Code § 15-20-26; a 15-year-old juvenile was living at this residence, which Byrd shared with his girlfriend; documentation from Alabama State Troopers revealed that Byrd's renewed driver's license on April 9, 2008, reflecting the above address, did not designate him as a registered sex offender; and documentation from Fairhope utilities, provided to Bettner by his counterpart in the Fairhope Police Department, Corporal Murray, revealed that Byrd lived at 10229 Mission Trace Trailer Park in Fairhope beginning April 14, 2006, before moving to Daphne, yet never registered with his department as a convicted sex offender. (*Compare* Doc.1,  at ¶¶ 17-23 *with* Doc. 26, Exhibit A.)

Byrd avers that he was arrested at his residence at 1307 Main Street on the basis of four warrants issued on July 3, 2008, and charging him with: failing to register as a sex offender, in violation of § 15-20-23 of the Alabama Code; failing to obtain a state-issued ID document, in violation of § 15-20-26.2 of the Alabama Code; violating the limitation upon residence (that is, establishing a residence within 2000 feet of a daycare facility or school), in contravention of § 15-20-26(c) of the Alabama Code; and residing in a prohibited residence (that is, residing with a juvenile),  in violation of § 15-20-26(c) of the Alabama Code. (*Compare* Doc. 1, ¶¶ 25-26 *with* Doc. 26, Exhibit A.)[1] Plaintiff appeared before a Baldwin County District Judge on July 4, 2008; bond was set at five thousand dollars ($5,000) with respect to each charge. (*Compare* Doc. 1, at ¶ 26 *with* Doc. 13, Exhibit A.)[2] On July 31, 2008, Byrd waived his right to a preliminary hearing; all charges were sent to the Baldwin County Grand Jury for consideration. (Doc. 13, Exhibit B.)

Byrd was indicted by the November 2008 session of the Baldwin County Grand Jury of the same charges identified above. (*Compare* Doc. 1, ¶ 27 *with* Doc. 26, Exhibit B.) On December 9, 2008, Byrd made his first appearance in the Circuit Court of Baldwin

---

[1]      While the Court infers from Byrd's complaint that he was arrested at his home on July 3, 2008, the face of the arrest report reflects that plaintiff was arrested on July 2, 2008. (*See* Doc. 26, Exhibit A, ALABAMA UNIFORM ARREST REPORT.) The undersigned believes, however, that the July 2, 2008 date is a typographical error both because the arrest report specifically states that the arrest was a warrant arrest and the warrants were issued on July 3, 2008 and because Byrd made his first appearance in court on July 4, 2008. (*Compare id. with* Doc. 13, Exhibit A.)

[2]      Byrd was confined in the Baldwin County Jail beginning on July 8, 2008. (*Compare* Doc. 1, at ¶ 1 *with id.* at ¶ 32.)

County, Alabama at which time bail again was set at $5,000 on each charge. (*See* Doc. 13, Exhibit D.)

On January 20, 2009, Byrd, represented by Donald D. Doerr, Jr., Esquire, entered pleas of not guilty to the charges and executed waivers of arraignment. (*Compare* Doc. 1, at ¶ 28 *with* Doc. 13, Exhibit E.) The following day, January 21, 2009, Byrd's attorney filed a verified motion to dismiss the indictments "arguing that they violated the Ex Post Facto, Double Jeopardy, Equal Protection and Due Process clauses of the Constitution in addition to being unconstitutionally vague. Counsel also argued that since Plaintiff was not a sexually oriented offender under Ohio's law, Alabama could not inflict a second punishment upon Plaintiff for a crime that he committed over twenty years ago simply because sex offenders are classified differently in Alabama than in Ohio." (Doc. 1, ¶ 29.) The undersigned has no doubt that in making these arguments Doerr relied upon several judgment entries made in the Common Pleas Court of Licking County, Ohio in 1999 finding that Byrd was not a sexual predator or sexually-oriented offender; at least one of these judgment entries appears to have been filed in the Circuit Court of Baldwin County, Alabama on July 24, 2008. (*See* Doc. 26, at Exhibits C & D.)

On September 9, 2009, Doerr filed a motion for judgment of acquittal "arguing that the evidence was insufficient to support a finding of guilty beyond a reasonable doubt as (1) the evidence failed to establish Plaintiff is a convicted sex offender; (2) he had a valid license[;] and[] (3) he didn't know that despite the fact he did not have to register in Ohio he would be considered a convicted sex offender in Alabama." (Doc. 1,

4

¶ 30.) That same day, Baldwin County Circuit Judge J. Langford Floyd entered an order directing the Baldwin County Jail to release Byrd to the custody of the Daphne City Jail "to await disposition of his DUI and speeding tickets," since he had dismissed all charges against Byrd arising from his failure to register as a sex offender (Doc. 26, Exhibit E; *see also* Doc. 1, at ¶ 31.)

> Since the Defendant will not be residing in Alabama and, upon posting a $1500.00 cash bond with the City of Daphne, is immediately returning to his home state of Ohio, where he is not required to register, the Defendant shall not be required to sign the Alabama Sex Offender Registration forms.

(Doc. 26, Exhibit E.) Byrd was released from the Baldwin County Jail after allegedly being held there for 460 days. (Doc. 1,  ¶ 32.)[3]

On August 15, 2011, Byrd filed a *pro se* complaint in this Court "arising out of an unlawful detention from **July 8, 2008** until **September 9, 2009**." (Doc. 1, ¶ 1 (emphasis in original).) Other than this statement, and the general statement that "Plaintiff brings this action against Defendants to redress the deprivation of rights secured Plaintiff by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and the common law[,]" (Doc. 1, ¶ 2), Byrd inserts in his complaint only the following language regarding the nature of the "claim" he is asserting against the named defendants:

> 34.  As a direct and proximate result of the acts of Defendants, Plaintiff was deprived of his physical liberty for an offense he had already taken

---

[3]      Byrd appears to have miscounted the time he spent in the Baldwin County Jail by more than one month.

responsibility for twenty years prior, and he was forced to incur legal expenses that he would not have otherwise had to incur.

35.  Cpl. Bettner, Cpl. Murray and the other Defendant officers acted with actual malice toward Plaintiff and with willful and wanton indifference to and deliberate disregard for the statutory and constitutional rights of plaintiff. Cpl. Bettner's and Cpl. Murray's actions and the actions of the other Defendant officers constitute unreasonable deprivation of liberty without due process of law.

(Doc. 1, ¶¶ 34-35.)

The City of Daphne and Corporal Donald Bettner filed their motion to dismiss on December 2, 2011 (Doc. 12; *see also* Doc. 13), as did the City of Fairhope and Corporal Murray (Doc. 14).[4]  All defendants contend that Byrd's asserted claim under 42 U.S.C. § 1983 for wrongful imprisonment (and/or wrongful arrest) is barred by the applicable two-year statute of limitations. (Docs. 12 & 14; *see also* Doc. 13.)

By the time Byrd filed his combined response in opposition to the defendants' motions to dismiss (*see* Doc. 26), he was represented by counsel (*see id*. at 11).  The undersigned appreciates the response as making the following arguments: (1) *Kelley v. City of Prichard,* 2011 WL 4857927 (S.D. Ala.  Sept. 19, 2011) and *Blakely v. Johnston*, 2010 WL 4269186 (S.D. Ala. Sept. 21, 2010), are distinguishable on their facts from the instant case and this Court should determine that plaintiff's false imprisonment claim accrued upon his release from his "unlawful incarceration" on September 9, 2009 (*see id*. at 4-5 & 8-11); and (2) he not only has a false arrest claim on the failure to register charge but, as

---

[4]      The undersigned notes that plaintiff's claims against the only other named defendant, Ms. Rochelle (*see* Doc. 1), were dismissed by the Court on December 19, 2011, without prejudice, due to Byrd's failure to file proof of service of his complaint on Rochelle (Doc. 20).

well, a claim for malicious prosecution (*see id.* at 6-7). In reply, the defendants argue that plaintiff's arguments are not well taken. (*See* Docs. 28 & 29.)

## CONCLUSIONS OF LAW

**A.**   **Motion to Dismiss Standard**.  Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint on the basis that the plaintiff has failed to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(6). A Rule 12(b)(6) motion questions the legal sufficiency of a complaint (or portions of a complaint); therefore, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., United States v. Gaubert*, 499 U.S. 315, 327, 111 S.Ct. 1267, 1276, 113 L.Ed.2d 335 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990). Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff. *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S.Ct. 1378, 1382, 103 L.Ed.2d 628 (1989).

Rule 8(a)(2) generally sets the benchmark for determining whether a complaint's allegations are sufficient to survive a Rule 12(b)(6) motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' As the Court held in Twombly, . . . the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."). Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic

7

recitation of the elements of a cause of action will not do.'" *Id.*, quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-1965, 167 L.Ed.2d 929 (2007). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*, quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1955.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief.

*Id.* at ___, 129 S.Ct. at 1949-1950 (internal citations and quotation marks omitted); *see also id.* at ___, 129 S.Ct. at 1950-1951 (a plaintiff must nudge his claims "'across the line from conceivable to plausible.'"); *see Speaker v. United States Dep't of Health & Human Services Centers for Disease Control & Prevention*, 623 F.3d 1371, 1381 (11th Cir. 2010) ("[G]iven the pleading standards announced in *Twombly* and *Iqbal*, [plaintiff] must do more than

recite [] statutory elements in conclusory fashion. Rather, his allegations must proffer

enough factual content to 'raise a right to relief above the speculative level.'").[5]

    **B.**    <u>**Statute of Limitations**</u>.  Plaintiff has suggested on more than one occasion

that this is a wrongful imprisonment case brought pursuant to 42 U.S.C. § 1983.

(*Compare* Doc. 26, at 1 *with* Doc. 1.) The Supreme Court held in *Owens v. Okure*, 488 U.S.

235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989) that in § 1983 suits federal courts "are to

borrow the 'general' or 'residual' statute of limitations for personal injuries provided

under the law of the state where the court hearing the case sits." *Lufkin v. McCallum,* 956

F.2d 1104, 1106 (11th Cir.) (citing *Owens v. Okure,* 488 U.S. at 236 & 249-250, 109 S.Ct. at

574 & 580-581),  *cert. denied*, 506 U.S. 917, 113 S.Ct. 326, 121 L.Ed.2d 246 (1992). In

Alabama, the applicable statute of limitations is two years. *Compare id. with* Ala.Code

§ 6-2-38(*l*) ("All actions for any injury to the person or rights of another not arising from

contract and not specifically enumerated in this section must be brought within two

years."). Thus, "Alabama's two-year statute of limitations for personal injuries is the

statute of limitations used for § 1983 actions heard in Alabama." *Ecklund v. Alabama*

*Medical Licensing Comm'n,* 2009 WL 4456368, *6 (S.D. Ala. Nov. 20, 2009), citing *Lufkin,*

---

[5]      While at the 12(b)(6) stage, a court normally just considers the allegations in the complaint, it is clear that it is not always "'limited to the four corners of the complaint.'" *Halmos v. Bomardier Aerospace Corp.,* 404 Fed.Appx. 376, 377 (11th Cir. Dec. 7, 2010), quoting *Long v. Slaton,* 508 F.3d 576, 578 n.3 (11th Cir. 2007). Indeed, the Eleventh Circuit has held that "a district court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a Rule 56 motion." *Id.* (citations omitted). To the extent, therefore, this Court has gone outside the complaint in making its findings of fact, there is no need for conversion of the instant motions to dismiss into summary judgment motions because the matters this Court has considered fall into the public record category.

*supra*, 956 F.2d at 1105 n.2 & 1108. Although it is clear that state law supplies the statute of limitations, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato,* 549 U.S. 384, 388, 127 S.Ct. 1091, 1095, 166 L.Ed.2d 973 (2007) (emphasis in original).

While, as aforesaid, plaintiff tries to have made clear that he is asserting a false imprisonment claim, in this regard, at best the complaint (and response) assert a "merging" false arrest/false imprisonment claim. (*See* Doc. 1; *compare id. with* Doc. 26.) The Supreme Court in *Wallace v. Kato*, *supra*, discussed the overlapping nature of these causes of action, specifically noting that false arrest is a species of false imprisonment. *Id*. at 388, 127 S.Ct. at 1095; *see also id*. at 388-389, 127 S.Ct. at 1095 ("'Every confinement of the person is an imprisonment, whether it be in a common prison or in a private house, or in the stocks, or even by forcibly detaining one in the public streets; and when a man is lawfully in a house, it is imprisonment to prevent him from leaving the room in which he is.'"). Thus, the Court elected to refer to these two torts together as false imprisonment, *see id*. at 389, 127 S.Ct. at 1095, and set about determining when the statute of limitations began to run on Wallace's false imprisonment claim, that is, the accrual date of the petitioner's claim. *See id*. at 389, 127 S.Ct. at 1096. In order to determine the beginning of the limitations period, the Court noted that it had to determine "when petitioner's false imprisonment came to an end." *Id*. "Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process*-when, for example, he is bound over by a magistrate or arraigned on charges." *Id*. (citations

10

omitted). Thus, the Court rejected Wallace's argument that his limitations period began to run on the date of his release from custody, *id.* at 390, 127 S.Ct. at 1096,[6] and, instead, concluded that the limitations period began to run "when he appeared before the examining magistrate and was bound over for trial." *Id.* at 391, 127 S.Ct. at 1097.  The Court concluded its decision with the specific holding "that the statute of limitations upon a § 1983 claim seeking damages for a false arrest[/imprisonment] in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Id.* at 397, 127 S.Ct. at 1100;[7] *see also Burgest v. McAfee,* 264 Fed.Appx. 850, 852 (11th Cir.) ("An action

---

[6]    "Even assuming . . . that all damages for detention pursuant to legal process could be regarded as consequential damages attributable to the unlawful arrest, that would not alter the commencement date for the statute of limitations. Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable." *Id.* at 391, 127 S.Ct. at 1097 (citations and internal quotation marks omitted).

[7]    In reaching this conclusion, the Supreme Court rejected Wallace's argument that *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) compelled the conclusion that his false arrest/imprisonment case could not accrue until the State of Illinois dropped its charges against him. *See Wallace v. Kato,* 549 U.S. at 392-393, 127 S.Ct. at 1097-1098.

> [T]he *Heck* rule for deferred accrual is called into play only when there exists "a conviction or sentence that has *not* been . . . invalidated," that is to say, an "outstanding criminal judgment." It delays what would otherwise be the accrual date of a tort action until the setting aside *of an extant conviction* which success in that tort action would impugn. We assume that, for purposes of the present tort action, the *Heck* principle would be applied not to the date of accrual but to the date on which the statute of limitations began to run, that is, the date petitioner became held pursuant to legal process. Even at that later time, there was in existence no criminal conviction that the cause of action would impugn; indeed, there may not even have been an indictment.

> What petitioner seeks, in other words, is the adoption of a principle that goes well beyond *Heck*: that an action which would impugn *an anticipated future*

(Continued)

for false imprisonment accrues when the prisoner 'becomes held pursuant to [legal] process[.]'"), *cert. denied*, 555 U.S. 997, 129 S.Ct. 489, 172 L.Ed.2d 363 (2008).

Here, Byrd was arrested on July 3, 2008, on the basis of four warrants that charged him with failing to register as a sex offender, failing to obtain a state-issued ID document, violating the limitation upon residence (that is, establishing a residence within 2000 feet of a daycare facility or school), and residing in a prohibited residence (that is, residing with a juvenile). (*See* Doc. 26, Exhibit A, ALABAMA UNIFORM ARREST REPORT.) Thereafter, plaintiff appeared before a Baldwin County District Judge on July 4, 2008 (*see, e.g.*, Doc. 13, Exhibit A); appeared before a different district judge on July 31, 2008, where he waived a preliminary hearing and was bound over to the grand jury (Doc. 13, Exhibit B); was indicted by the November 2008 session of the Baldwin County Grand Jury (*compare* Doc. 1, ¶ 27 *with* Doc. 26, Exhibit B); and was arraigned on January 20, 2009.

---

*conviction* cannot be brought until that conviction occurs and is set aside. The impracticality of such a rule should be obvious.

.     .     .

We are not disposed to embrace this bizarre extension of *Heck*. If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended. . . . If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit.

*Id.* at 393 & 393-394, 127 S.Ct. at 1097-1098 & 1098.

Because it is clear that "'[a]n arrest warrant constitutes legal process,'" *Spruell v. Harper,* 2009 WL 4041937, *3 (N.D. Ga. Nov. 18, 2009), quoting *Calero-Colon v. Betancourt-Lebron,* 68 F.3d 1, 4 (1st Cir. 1995); *see also Grider v. City of Auburn,* 628 F.Supp.2d 1322, 1334 (M.D. Ala. 2009) ("[A]n arrest made pursuant to a warrant constitutes a seizure pursuant to legal process for the purpose of a malicious prosecution claim[.]"), *aff'd in part and rev'd in part on other grounds,* 618 F.3d 1240 (11th Cir. 2010), Byrd's false imprisonment/arrest claim accrued on July 3, 2008.[8]  Inasmuch as Byrd's false imprisonment/arrest claim accrued more than two years before he filed this action on August 15, 2011 (Doc. 1),[9] this claim is barred by the two-year statute of limitations and is due to be dismissed with prejudice.

     **C.**    **Malicious Prosecution.**  Although the undersigned agrees with the defendants regarding any false imprisonment/arrest claim made by Byrd, this Court is mindful, as stated in *Spruell, supra,* that "the substance of the Plaintiff's claim is what matters, not how he labels it." *Id.* at *2 (citation omitted). In this case, the undersigned

---

    [8]    Even if this Court was to ignore this date (which it does not), Byrd can make no argument that he was not being held pursuant to legal process upon his appearance before the district judge on July 4, 2008, or again on July 31, 2008, or at the very latest when he was arraigned on January 20, 2009. *See Wallace v. Kato, supra,* 549 U.S. at 389, 127 S.Ct. at 1096 ("[A] false imprisonment ends once the victim becomes held *pursuant to such process*-when, for example, he is bound over by a magistrate or arraigned on charges."). Using any of these additional dates as the appropriate accrual date does not further plaintiff's argument because his false imprisonment/arrest claim would still be time-barred as he did not file the instant complaint until August 15, 2011 (Doc. 1), more than two years after all of these additional dates.

    [9]    Because Byrd did not file his complaint within the two-year limitations period, *Heck v. Humphrey, supra,* did not toll the accrual of his claim for false imprisonment/arrest. *Burgest, supra,* 264 Fed.Appx. at 852-853.

finds that the substance of Byrd's claim is, in truth, a claim for malicious prosecution. *Compare Spruell, supra,* at *3 ("'The critical inquiry that distinguishes malicious prosecution from false arrest . . . is whether the [arrest was] made pursuant to a warrant. As a general rule, an unlawful arrest pursuant to a warrant will be more closely analogous to the common law tort of malicious prosecution. An arrest warrant constitutes legal process, and it is the tort of malicious prosecution that permits damages for confinement pursuant to legal process. On the other hand, [a] wrongful warrantless arrest[] typically resemble[s] the tort of false arrest.'" (quoting *Calero-Colon v. Betancourt-Lebron*, 68 F.3d 1, 5 (1st Cir. 1995)) *with Wallace v. Kato, supra,* 549 U.S. at 389 & 390, 107 S.Ct. at 1095 & 1096 ("The sort of unlawful detention remediable by the tort of false imprisonment is detention *without legal process*[.] . . . Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process*-when, for example, he is bound over by a magistrate or arraigned on charges. . . . Thereafter, unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process." (emphasis in original)) *and Whiting v. Traylor,* 85 F.3d 581, 585 (11th Cir. 1996) ("Obtaining an arrest warrant is one of the initial steps of a criminal prosecution. Under these circumstances (that is, where seizures are pursuant to legal process), we agree with those circuits that say the common law tort 'most closely analogous' to this situation is that of malicious prosecution."). In other words, inasmuch as it is clear that legal process issued on the date Byrd was arrested, that is, on July 3,

2008, it is apparent that plaintiff can only be seeking to remedy his detention accompanied by alleged wrongful institution of legal process. This, of course, is a malicious prosecution claim.[10]

Having determined the real substance of plaintiff's claim, particularly since any claim for false imprisonment/arrest is time-barred, the undersigned's consideration of the defendants' motions to dismiss is not at an end, as was the case in *Spruell, supra,* because the defendants contend that plaintiff has not pled and established all elements of a malicious prosecution claim (*see* Doc. 28, at 9-12; Doc. 29,  at 3 & 4).

> To  establish a §  1983 malicious prosecution claim, the plaintiff must prove two things: (1) the elements of the common law tort of malicious prosecution; and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures. When malicious prosecution is brought as a federal constitutional tort, the outcome of the case does not hinge on state law, but federal law, and does not differ depending on the tort law of a particular state. For purposes of a §  1983 malicious prosecution claim, the constituent elements of the common law tort of malicious prosecution include: (1) a criminal prosecution  instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused.

*Tucker v. City of Florence, Alabama*, 765 F.Supp.2d 1320, 1333 (N.D. Ala. 2011) (internal citations, quotation marks, and brackets omitted); *compare Kingsland v. City of Miami,* 382

---

[10]      There is no statute of limitations issue in regard to plaintiff's malicious prosecution claim since this claim does not accrue until "the prosecution terminates in the prisoner's favor[,]" *Burgest, supra,* 264 Fed.Appx. at 852 (citation omitted); *see also Whiting, supra,* 85 F.3d at 585-586 ("[W]here a section 1983 plaintiff is seized following the institution of a prosecution . . . and he seeks to recover damages for all the elements of the prosecution, he can properly wait until the prosecution terminates in his favor to bring his section 1983 claim which alleges that the seizure was unreasonable."), and this could not have occurred, if it occurred at all, until December 9, 2009. Thus, plaintiff's complaint, filed August 15, 2011, is timely.

F.3d 1220, 1234 (11th Cir. 2004) ("To establish a federal malicious prosecution claim

under § 1983, a plaintiff must prove (1) the elements of the common law tort of

malicious prosecution, and (2) a violation of h[is] Fourth Amendment right to be free

from unreasonable seizures.") *with Wood v. Kesler*, 323 F.3d 872, 881-882 (11th Cir.)

(recognizing the elements of malicious prosecution under Alabama common law are the

same as under Georgia law and federal common law, as follows: "(1) a criminal

prosecution instituted or continued by the present defendant; (2) with malice and

without probable cause; (3) that terminated in the plaintiff accused's favor; and (4)

caused damage to the plaintiff accused."), *cert. denied*, 540 U.S. 879, 124 S.Ct. 298, 157

L.Ed.2d 143 (2003).

As much as the undersigned is convinced that the real substance of plaintiff's

claim is that it is a malicious prosecution claim, the Court is also convinced that Byrd

has not pled the essential elements of a malicious prosecution claim, either in his *pro se*

complaint or in his response to the motions to dismiss filed with the assistance of

counsel, as explained more fully *infra*. Thus, this claim is due to be dismissed for failure

to state a claim upon which relief can be granted; however, such dismissal is without

prejudice to plaintiff's ability to seek leave of the Court to amend his complaint, *see*

Fed.R.Civ.P. 15(a)(2) ("In all other cases, a party may amend its pleading only with the

opposing party's written consent or the court's leave. The court should freely give leave

when justice so requires."), and appropriately plead all elements of a viable claim for malicious prosecution.[11]

The undersigned now discusses the most glaring deficiencies in plaintiff's complaint and response that require dismissal of his malicious prosecution claim. In *Tucker, supra,* the court explained that if probable cause existed for the police officer to arrest the plaintiff, her claims for malicious prosecution and false arrest would fail since "'the existence of probable cause defeats a § 1983 malicious prosecution claim[,]'" 765 F.Supp.2d at 1333, quoting *Grider v. City of Auburn, Alabama*, 618 F.3d 1240, 1256 (11th Cir. 2010),[12] and "'the existence of probable cause at the time of arrest constitutes an absolute bar to a section 1983 action for false arrest.'" *Id.* (internal bracket omitted), quoting *Case v. Eslinger,* 555 F.3d 1317, 1326-1327 (11th Cir. 2009).  Neither in the complaint nor in the response in opposition to the motions to dismiss does Byrd allege that probable cause did not exist at the time of his arrest on July 3, 2008. Indeed, in the complaint Byrd simply alleges that "Cpl. Bettner claims he had enough probable cause to obtain warrants and arrest Plaintiff[;]" (Doc. 1, at ¶ 24);[13] however, he nowhere

---

[11]    Allowing the plaintiff to file an amended complaint in this case, if he wishes, is preferable to simply dismissing his complaint outright.

[12]    As previously pointed out, in *Grider*, the district court noted that "an arrest made pursuant to a warrant constitutes a seizure pursuant to legal process for the purpose of a malicious prosecution claim[.]" 628 F.Supp.2d at 1334. The appellate court added that "it is well established that an arrest without probable cause is an unreasonable seizure that violates the Fourth Amendment." *Grider*, 618 F.3d at 1256 (citations omitted).

[13]    Moreover, plaintiff specifically states that he is only seeking redress for his "unlawful detention from **July 8, 2008** until **September 9, 2009**[,]" (Doc. 1, ¶ 1 (emphasis in original), a period which obviously follows his arrest on July 3, 2008.

alleges that no probable cause existed nor does he allege facts which would suggest that probable cause was lacking at the time of arrest (*id.* at 3-4). Moreover, plaintiff's counsel has set forth nothing, that is, no new facts, in Byrd's response tending to show that there was no probable cause for plaintiff's arrest; the only evidence counsel points to are the judgment entries from Licking County, Ohio establishing that, under Ohio law, plaintiff is not a sexual predator or sexually-oriented offender, one of which was filed in the Circuit Court of Baldwin County, Alabama on July 24, 2008 (*see* Doc. 25, Exhibit D). Certainly, nothing about this evidence, on its face, suggests that probable cause did not exist to arrest Byrd on July 3, 2008, under Alabama law, for failing to register as a convicted sex offender. Accordingly, because the complaint and response are devoid of any allegations and of any facts that plausibly suggest the required lack of probable cause element of a malicious prosecution claim, plaintiff has failed to state a malicious prosecution claim against the named defendants. *Coggins v. Abbett,* 2008 WL 2476759, *10 (M.D. Ala. June 18, 2008); *see also Duke v. Houston County,* 2008 WL 901200, *10-11 (M.D. Ala. Mar. 31, 2008) (granting the defendants' motion to dismiss the malicious prosecution claim for failure to allege the required element that the Sheriff of Houston County and a Houston County Deputy Sheriff acted without probable cause); *see Jones v. Union City,* 2011 WL 5600566, *1-2 (11th Cir. Nov. 18, 2011)  (affirming district court's dismissal of plaintiff's malicious prosecution claim because he did not plead the

essential elements of such a claim as there was no assertion that the action lacked

probable cause).[14]

---

[14]      Plaintiff argues in his opposition brief that the officers knew he did not have to register as a sex offender in Ohio and, therefore, *ipso facto* (or even more appropriately, *ipso jure*) knew he would not have to register in Alabama yet still presented the case to the prosecutor and sought an indictment. (*See* Doc. 26, at 7.) Over and above the fact that this argument does not "save" plaintiff's claim, since he has not alleged that his arrest was made without probable cause, *see Grider, supra*, 618 F.3d at 1256 ("[I]t is well established that an arrest without probable cause is an unreasonable seizure that violates the Fourth Amendment. . . . [T]he existence of probable cause defeats a § 1983 malicious prosecution claim."), such "continuation" argument begs a multitude of questions itself, the least of which is whether Byrd has sued the correct parties. As noted in *Wallace v. Kato*, "at common law damages for detention after issuance of process or arraignment would be attributable to a tort other than the unlawful arrest alleged in petitioner's complaint-and probably a tort chargeable to defendants other than the respondents here." 549 U.S. at 391, 127 S.Ct. at 1097.

The undersigned also points out here that there is simply nothing about the suppositions contained in plaintiff's opposition brief (*see* Doc. 26, at 7 ("It can be argued that either Murray or Bettner testified at the Grand Jury and stated that Plaintiff was convicted of a sex crime and did not register.")) that even begins to suggest misconduct or malice by the named defendants, particularly since Byrd has never disputed the "fact" that he was convicted of rape in Ohio in 1980 or the "fact" that he never registered in Alabama as a sex offender. Indeed, it is impossible for the undersigned to imagine how Bettner and Murray would have known that the Ohio court's findings left plaintiff's seizure and detention (in Alabama) devoid of probable cause, especially in light of the admitted argument made by Byrd's defense attorney on December 9, 2009 that Byrd "didn't know that despite the fact he did not have to register in Ohio he would be considered a convicted sex offender in Alabama." (Doc. 1, at ¶ 30.) If a defense attorney is unsure about the impact of a decision by an out-of-state court relative to Alabama law, how can this Court find that the defendant police officers should have known the import (and impact) of such findings?

Finally, all of the above begs the question of whether plaintiff can properly allege that the actions of Bettner and Murray caused him damage. *Cf. Barts v. Joyner,* 865 F.2d 1187, 1195 (11th Cir.) ("We reject plaintiff's contention that she is entitled to damages for her criminal trials, conviction, incarceration, and the resulting aggravation of her Rape Trauma Syndrome. The intervening acts of the prosecutor, grand jury, judge and jury—assuming that these court officials acted without malice that caused them to abuse their powers—each break the chain of causation unless plaintiff can show that these intervening acts were the result of deception or undue pressure by the defendant policemen."), *cert. denied*, 493 U.S. 831, 110 S.Ct. 101, 107 L.Ed.2d 65 (1989).

This deficiency is not the only problem the undersigned perceives with Byrd's malicious prosecution claim, however. As set forth above, another element of a malicious prosecution claim is that the criminal prosecution was terminated in the plaintiff's favor. *See Wood, supra,* 323 F.3d at 881.

> Courts have [] reasoned that only terminations that indicate that the accused is innocent ought to be considered favorable. Thus, courts have found that withdrawal of criminal charges pursuant to a compromise or agreement does not constitute favorable termination and, thus, cannot support a claim for malicious prosecution. Similarly, courts have refused to permit a finding of favorable termination where the stated basis for the dismissal of criminal charges has been in the interests of justice, or where a conviction has been reversed and the cause expressly remanded for retrial[.]
>
> Consistent with each of the policies underlying the favorable termination requirement, however, courts have found favorable termination to exist by virtue of an acquittal, an order of dismissal reflecting an affirmative decision not to prosecute, a dismissal based on the running of the statute of limitations, an entry of a nolle prosequi, and, in some cases, a granted writ of habeas corpus.

*Uboh v. Reno,* 141 F.3d 1000, 1004-1005 (11th Cir. 1998) (internal citations and quotation marks omitted); *cf. Chatman v. Pizitz, Inc.,* 429 So.2d 969, 971 & 971-972 (1983)  ("[A] *nolle prosequi* of the charge is a judicial determination which will support the plaintiff's *prima facie* showing of the 'favorable disposition' element of a malicious prosecution claim. In the context of a malicious prosecution suit, however, plaintiff's prima facie case may be overcome by a showing that the dismissal of the criminal charge was a component element of a settlement or compromise agreement between the parties. Where defendant in a malicious prosecution suit fails to come forward with evidence of compromise, plaintiff's proof of *nolle prosequi* or order of dismissal of the criminal

charge meets the 'favorable disposition' requisite of a malicious prosecution claim as a matter of law. On the other hand, where defendant's proof of compromise is unchallenged by plaintiff, notwithstanding plaintiff's proof of dismissal of the criminal charge, defendant is entitled to judgment as a matter of law. To paraphrase the Restatement: A malicious prosecution plaintiff, having bought his peace, may not thereafter assert that the criminal proceedings were terminated in his favor.").

Based upon the foregoing, and in light of the wording of Baldwin County Circuit Judge J. Langford Floyd's September 9, 2009 order (Doc. 26, Exhibit E), it is not at all clear to the undersigned that the dismissal of charges was not the result of a compromise or agreement;[15] therefore, it is not clear from the facts set forth in the complaint and response that plaintiff has properly alleged this element of a malicious prosecution claim.[16]

## CONCLUSION

Based upon the foregoing, the Magistrate Judge recommends that the Court **GRANT** the defendants' motions to dismiss (Docs. 12 & 14; *see also* Docs. 28 & 29). To the extent Byrd's complaint asserts a false imprisonment/arrest claim, it is due to be

---

[15]    Indeed, Judge Floyd's order suggests that there was an agreement to dismiss the charges, and not require Byrd to sign the Alabama Sex Offender Registration forms, in exchange for the defendant's agreement to immediately return to his home state of Ohio.

[16]    The defendants' requests that this Court award them their attorney's fees, costs, and expenses incurred in responding to the complaint (*see* Doc. 12, at 2; Doc. 14, at 1; Doc. 29, at 4) are **DENIED** inasmuch as the defendants have cited to no legal authority justifying such awards.

**DISMISSED WITH PREJUDICE** because it was not filed within two years of the accrual date of this claim. To the extent the complaint, along with plaintiff's response in opposition to the motions to dismiss, should be read by the Court as asserting a malicious prosecution claim, such claim is due to be **DISMISSED WITHOUT PREJUDICE** due to Byrd's failure to state a claim upon which relief can be granted. More specifically, plaintiff's complaint and responsive brief fail to identify facts that plausibly suggest the required lack of probable cause (for the arrest) element of a malicious prosecution claim.[17]

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 9th day of March, 2012.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

[17]   In addition, for the reasons noted above, the facts set forth in those two documents also do not plausibly suggest that the criminal prosecution was terminated in plaintiff's favor.

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.     *Objection.*  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).   The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[18] after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.     *Transcript (applicable Where Proceedings Tape Recorded).*  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[18]     Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).